Jacob M. Polakoff, Bar No. 035832006
jpolakoff@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. 215.875.3000
Fax 215.875.4604

Janet Varnell
Brian Warwick
VARNELL &WARWICK, P.A.
1101 E. Cumberland Ave, Suite 201H
Tampa, FL 33602
Tel. 352-753-8600
Fax 352-504-3301

*Attorneys for Plaintiffs*
*[Addtl. Counsel on Sig. Page]*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SUZANNE CARUSO, APRIL ADAMS, GEORGE PEASLEE, JARED MCCALLISTER, and TIFFANY LOYA, on behalf of themselves and all others similarly situated,** | : : : : : : | **Case No.: 3:21-cv-9665-FLW-DEA**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |
| **Plaintiffs,** | : : | **DEMAND FOR JURY TRIAL** |
| **v.** | : : | |
| **Jet Set Sports, LLC d/b/a CoSport,** | | |
| **Defendant** | | |

1

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

> *A promisor should not be compelled to give something for nothing. The parties agreed upon an exchange of performances, and an exchange cannot now take place. Even if not stated in express terms, the promisor's duty is constructively conditional on the return performance by the promisee. Even though the nonperforming promisee is not in default because the impossibility doctrine discharges the duty, it cannot demand something for nothing from the other party.*

*Facto v. Pantagis*, 390 N.J. Super. 227, 234, 915 A.2d 59, 63 (App. Div. 2007) (citing 14 *Corbin on Contracts* § 78.2 (Perillo rev. 1999)).

## <u>NATURE OF THE ACTION</u>

1.    This is a case about Defendant Jet Set Sports, LLC d/b/a/ CoSport ("Defendant" or "CoSport") breaking the law by requiring its customers to pay "something for nothing."

2.    CoSport sold tickets to the Tokyo Summer Olympic and Paralympic Games ("The Tokyo Olympics") to American consumers. When Japan barred international spectators from attendance, CoSport did not provide its customers with full refunds. Instead, CoSport conditioned its willingness to pay a partial refund (75%) on its customers signing a document purporting to waive their rights to the non-refunded amounts—namely CoSport's anticipated profits (25%).

3.    CoSport's conduct violated New Jersey law, which squarely holds that when the fundamental purpose of a contract has been frustrated, *neither* party has a

2

duty to perform. That means that while CoSport had no obligation to provide tickets and services, Plaintiffs also had no obligation to pay for such tickets and services.

4.     CoSport's effort to capitalize on the misfortune of others is not only wrong, it is also illegal.

5.     Plaintiffs Suzanne Caruso, April Adams, George Peaslee, Jared McCallister, and Tiffany Loya ("Plaintiffs") now seek this Court's assistance in obtaining redress for themselves and all other Americans who purchased tickets from CoSport.

## **PARTIES**

6.     Plaintiff Suzanne Caruso is a Texas citizen residing in Dallas County, Texas.

7.     Plaintiff April Adams is a California citizen residing in Sacramento County, California.

8.     Plaintiff George Peaslee is a Hawaii citizen residing in Honolulu, Hawaii.

9.     Plaintiff Jared McCallister is a West Virginia citizen residing in Holden, West Virginia.

10.     Plaintiff Tiffany Loya is a California citizen residing in San Jose, California.

11.    Defendant Jet Set Sports, LLC d/b/a CoSport is a New Jersey corporate citizen with its corporate headquarters located at 196 Route 202 North, Far Hills, NJ 07931.

## JURISDICTION AND VENUE

12.    The Court has personal jurisdiction over CoSport because it is a corporation registered under the laws of the State of New Jersey and maintains its headquarters and principal place of business at 196 Route 202 North, Far Hills, NJ 07931.

13.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, since certain members of the Class are citizens of states different from the state in which Defendant is a citizen and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).

14.    Venue is proper in this judicial District because a substantial part of the events and omissions giving rise to the claims herein occurred in this judicial District as Defendant is headquartered here and because Defendant is subject to personal jurisdiction in this judicial District.  28 U.S.C. § 1391.

15.    The CoSport "Terms and Conditions of Sale Tokyo 2020 Olympic Games" Agreement includes the following choice of law provision requiring venue in New Jersey:

> **Choice of Law:**  The validity, construction, enforcement and interpretation of these Terms and Conditions, and any

4

and all claims arising out of or relating to the subject matter of these Terms and Conditions (including all tort claims), shall be governed by the laws of the State of New Jersey, USA, without regard to the conflict of law's provisions thereof. Customer hereby agrees that any suit or legal proceeding instituted in connection with the subject matter of these Terms and Conditions shall be brought (and thereafter maintained) exclusively in the state courts of or federal courts located in New Jersey, United States.

## **FACTUAL ALLEGATIONS**

16.    CoSport was the exclusive United States seller of event tickets and travel packages to the Tokyo Olympics.

17.    CoSport's position as the exclusive seller of tickets and travel packages was lucrative, and longstanding. Countries and cities across the globe battle for the opportunity to become the host city because the event comes with billions of dollars in investment and billions in revenue. For example, the final budget for the 2020 Tokyo Olympics has reached an astonishing $15.4 Billion.

18.    Sead Dizdarevic, the owner and Co-CEO of CoSport, is a longtime Olympic insider who makes tens of millions of dollars on each of the Olympic Games. He has exclusive contracts that give him a monopoly to sell Olympic and Paralympic event tickets and travel packages at steep markups. Working behind the scenes for 25 years, he uses his powerful personal connections with Olympic powerbrokers to gain a lock on Olympic ticket and travel-package sales in North

America, Europe, Australia and other countries around the globe. His companies are the largest buyer of Olympic Tickets in the world. News reports have declared that Dizdarevic makes more money off the Olympic games than any other single person in the world. (www.SeattleTimes.com/sports/olympics/ticket-monopoly-brings-one-man-big-profit/, Orig. Pub. Nov. 16, 2009.)

19.    According to CoSport's website:

> CoSport is the world's leading provider of Olympic Games tickets and hospitality packages, having supported hundreds of thousands of fans at the past 10 Olympic and Olympic Winter Games.
>
> For the next Olympic Games in Tokyo, we are proud to serve as an Official Sponsor/Partner of the National Olympic Committee as well as the exclusive Authorized Ticket Reseller in the following 8 territories: Australia, Bulgaria, Croatia, Hellenic, Jordan, Norway, Sweden, and the United States.

(www.cosport.com/AboutUs).

20.    Authorized ticket sellers offer tickets to various events, often for more than $1,000 per event ticket. CoSport adds at least a 20 percent mark-up on top of the face-value price of each individual event ticket. CoSport also reserves tickets to premium events and its best seats for those consumers who can pay exorbitantly inflated prices that include hotels, transportation and meals to form expensive travel packages. CoSport generates a much higher profit margin than 20 percent on its ticket and travel packages.

6

21.    As the exclusive seller of Olympic and Paralympic tickets for the United States, CoSport has no competition. This directly translates to higher prices for consumers and it directly impacts ticket availability. When the Tokyo Summer Olympics tickets were offered, CoSport limited the availability of tickets and, in particular, premium event tickets, to only those customers who purchased expensive packages with highly inflated prices.

22.    The first public sales of tickets for the Tokyo Olympics were made in the summer of 2019.  At that point in time, CoSport published the "Terms and Conditions of Sale Tokyo 2020 Olympic Games" on its website. Customers would order from the website, by telephone or through a travel agent, but there were no other terms or conditions available to purchasers beyond the published Terms and Conditions then appearing on CoSport's website. No term contemplated that the Olympic Games would be postponed for a year beyond the scheduled date nor did the Terms and Conditions address a scenario where international spectators were banned from attendance.

23.    On March 24, 2020, the Tokyo Olympic Games were rescheduled from the summer of 2020 to begin a full year later, on July 23, 2021, due to the Covid-19 pandemic.

24.    On March 20, 2021, the Japanese organizers, along with the International Olympic Committee, banned international spectators from attending any Olympic events:

> The decision on international spectators will "ensure safe and secure Games for all participants and the Japanese public," Tokyo 2020 organizers said in a statement following five-way talks that included the head of the International Olympic Committee, Thomas Bach, and the Tokyo governor."

> "People who are involved in the Olympics in some way may be allowed to enter the country, whereas regular visitors will not be able to," Tokyo 2020's Muto said.

(https://www.reuters.com/lifestyle/sports/tokyo-2020-likely-wont-allow-foreign-olympic-volunteers-kyodo-2021-03-20/).

25.    Once that decision was made and announced, the purpose of the event tickets and travel packages sold to customers in the United States was so frustrated as to render the contracts impossible to perform.

26.    CoSport acknowledged the impossibility of performance in its communications both after the initial event postponement and after the international spectator ban by confirming that it could not deliver the promised event tickets or travel packages as promised.

27.    CoSport capitalized on Japan's travel ban by acting in an inequitable, unfair and illegal manner towards customers in the United States regarding their event ticket and travel package contracts. CoSport has also taken inconsistent

positions and made false and misleading representations in its communications with its customers.

28.     After the 2021 decision to ban international spectators, CoSport offered two options to Plaintiffs and the Class: Option one was to receive a refund of 75 percent of the funds paid. Option two was to receive a credit for the total amount of the purchase for use at future Olympic Games.

29.     In order for United States customers to avail themselves of any refund, however, CoSport required customers to fill out CoSport's "refund request" form which conditioned any refund upon releasing CoSport of liability for its failure to refund the 25% that it would keep.

30.     Olympic ticket holders in other countries who purchased from ticket sellers that are not controlled by CoSport or Dizdarevic, such as the United Kingdom, are being provided 100% full refunds.

31.     Instead of acknowledging that both parties were excused from performance based on impossibility and providing a refund, CoSport instead sought to use its position as the holder of Plaintiffs' money to manipulate consumers into entering into a new agreement releasing CoSport from liability.

32.     Among other things, CoSport wanted to retain a substantial portion of the money paid despite its customers not receiving the event tickets or travel packages to the Tokyo Summer Olympics.

33.     CoSport offered no consideration for the new terms and releases it insisted were a condition of providing refunds. For example, CoSport sent an email to customers regarding the 75% refund with a "Survey" attached stating:

> By exercising this option, I also agree to forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with your order (sic). You also agree you have read and understand the refund process outlined in the accompanying letter, dated April 6.

34.     Importantly, the Refund Request Survey did NOT allow customers to seek a refund without also agreeing to absolve CoSport of further liability. In other words, Plaintiffs and other class members were forced to either forego any refund or be forced to allow CoSport to retain 25% of their money despite the fact that they received nothing of value in return. When customers tried to cross through these new terms on the request form, CoSport rejected the request and refused to provide any refund.

35.     CoSport, on the other hand, sought to retain the profits it would have earned had the contracts' essential purpose not been frustrated.

36.     CoSport apparently received a refund for all of its sales to United States customers because it stated that "all orders were cancelled as a result of the international spectator ban imposed by the Japanese Government."

37.     The actual amounts paid to and refunded from the providers of hotels and meals are known to CoSport and are not transparent to customers. However, the

Japanese Government reportedly required a full refund be provided by all Japanese accommodation providers in connection with accommodations provided for the Olympic Games.

38.    Public records indicate that, in addition to getting back its money for tickets and accommodations, CoSport also obtained pandemic related relief of at least $1.7M in taxpayer funds from the United States Government under the Paycheck Protection Program.

A.    **Factual Allegations of Plaintiff Caruso**

39.    Plaintiff Suzanne Caruso is an avid supporter of the US Olympic Team, having attended several Olympic events in the past.

40.    On December 2, 2019, Plaintiff Caruso purchased from CoSport event tickets and a travel package for the Tokyo Olympic Games for $16,375.00.

41.    As part of the travel package, Plaintiff Caruso purchased accommodations from CoSport including five (5) nights at the Keio Plaza Hotel, daily breakfast, pre-game and onsite management totaling $14,323.36, bringing the grand total of Plaintiff Caruso's purchase from CoSport to $16,375.00.

42.    It is impossible for Plaintiff Caruso to travel to Japan for the Tokyo Olympics given the ban on international spectators.

43. Plaintiff Caruso did not complete the Refund Request form requested by CoSport because she did not agree to CoSport's retention of 25% of her money and did not agree to the liability limitations set forth in that document.

44. Plaintiff Caruso is uncertain regarding her rights and obligations under the contract with CoSport due to the postponement and/or the ban on international spectators so frustrating the purpose of the contract to the point of impossibility.

45. Plaintiff Caruso felt financially coerced by CoSport demanding her agreement to new terms and conditions under the threat to retain all of her money.

**B.    Factual Allegations of Plaintiff Adams**

46. Plaintiff April Adams purchased event tickets and a travel package from CoSport totaling $87,708 from CoSport on July 11, 2019.

47. Upon the announcement that international spectators could no longer attend, Plaintiff Adams requested a full refund on multiple occasions. Although Plaintiff Adams had already clearly requested a refund, CoSport refused to provide any refund unless and until Plaintiff Adams filled out a Refund Request form.

48. Plaintiff Adams ultimately filled out a Refund Request form because she feared she would not receive any refund at all if she did not. Plaintiff Adams felt financially coerced by CoSport demanding her agreement to new terms and conditions under the threat to retain all of her money.

49.    It is now impossible for Plaintiff Adams to travel to Japan for the Tokyo Olympics given the ban on international spectators.

50.    Plaintiff Adams is uncertain regarding her rights and obligations under the contract with CoSport due to the postponement and/or the ban on international spectators frustrating the purpose of the contract to the point of impossibility.

### C.    Factual Allegations of Plaintiff McCallister

51.    Plaintiff Jared McCallister made two purchases from CoSport of event tickets and a travel package, totaling $28,165.50.

52.    Upon the announcement that international spectators could no longer attend, Plaintiff McCallister emailed CoSport requesting a full refund on multiple occasions. Although Plaintiff McCallister had already clearly requested a refund, on April 12, 2021, CoSport emailed its Refund Request form and accompanying Survey with a return date requirement a mere 4 days later.

53.    Plaintiff McCallister filled out a Refund Request form because he feared he would not receive any refund at all if he did not.

54.    It is now impossible for Plaintiff McCallister to travel to Japan for the Tokyo Olympics given the ban on international spectators.

55.    Plaintiff McCallister is uncertain regarding his rights and obligations under the contract with CoSport due to the postponement and/or the ban on

international spectators frustrating the purpose of the contract to the point of impossibility

56.    Plaintiff McCallister felt financially coerced by CoSport demanding his agreement to new terms and conditions under the threat to retain all of his money.

**D.    Factual Allegations of Plaintiff Peaslee**

57.    On December 2, 2019, Plaintiff George Peaslee purchased from CoSport event tickets and a travel package for the Tokyo Olympic Games for $16,195.61.

58.    After the initial announcement of the postponement of the Tokyo Olympics, Plaintiff Peaslee requested a refund. Plaintiff Peaslee filled out a Refund Request form because he feared that if he did not, he would not receive any refund at all, based on communications from CoSport.

59.    CoSport sent only a partial refund to Plaintiff Peaslee.

60.    Plaintiff Peaslee is uncertain regarding his rights and obligations under the contract with CoSport due to the postponement and/or the ban on international spectators frustrating the purpose of the contract to the point of impossibility and the failure of CoSport to provide a full refund.

61.    Plaintiff Peaslee felt financially coerced by CoSport demanding his agreement to new terms and conditions under the threat to retain all of his money.

**E.    Factual Allegations of Plaintiff Loya**

62.    In July of 2019, Plaintiff Tiffany Loya purchased from CoSport event tickets and a travel package totaling $13,384.96.

63.    After the announcement of the postponement of the Tokyo Olympics, Plaintiff Loya made refund requests and contacted CoSport regarding her refunds over a period of 7 months. After no responsive communications from CoSport, in January of 2021, CoSport responded by requiring her to complete a Refund Request form. When she received the form, she noted that it was "back dated" to August of 2020.

64.    Plaintiff Loya filled out a Refund Request form because, if she did not, she feared she would not receive any refund at all.

65.    Plaintiff Loya is uncertain regarding her rights and obligations under the contract with CoSport given the postponement and/or prohibition on international spectators frustrating the purpose the contract to the point of impossibility and the failure of CoSport to provide a full refund.

66.    Plaintiff Loya felt financially coerced by CoSport demanding her agreement to new terms and conditions under the threat to retain all of her money.

67.    Eventually, in 2021, CoSport sent only a partial refund to Plaintiff Loya. Upon learning about the litigation and the fervor over CoSport's refund practices, Mrs. Loya has since sent a letter to CoSport revoking her consent to the Refund Request form.

## CLASS ALLEGATIONS

68.    Plaintiffs bring this case on behalf of themselves and as a class action under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of all members of the following Class (the "Nationwide Class" or "the Class"):

>  All natural persons and entities in the United States who purchased and/or paid for event tickets and/or travel packages from CoSport for the Tokyo Olympic Games and who have not received a full refund.

69.    Excluded from the Nationwide Class are: (a) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; and (b) the judge to whom this case is assigned and any member of the judge's immediate family.

70.    Plaintiffs can identify and ascertain all other class members from CoSport's business records. These records are computerized and will reflect purchases made by the class members.

71.    **Numerosity:** Plaintiffs do not know the exact size of the Class because this information is in CoSport's exclusive control. However, based on CoSport's monopoly on ticket sales in the United States and prior sales history, the Class is sufficiently numerous. Plaintiffs believe the class members number in the tens of thousands and that class members are dispersed throughout the United States. Therefore, joinder of all class members would be impracticable.

72. **Typicality:** Plaintiffs' claims are typical of other class members' claims because Plaintiffs and all class members were subject to a contractual arrangement that was similar in all relevant aspects and were subject to CoSport's attempt to financially coerce new terms and conditions.

73. **Commonality:** Questions of law and fact common to the Class exist including the following:

    a.    Whether the contracts between CoSport and the members of the Class was frustrated to the point of impossibility;

    b.    Whether any subsequent terms and conditions set forth on the Refund Request forms are enforceable due to economic duress;

    c.    What the rights and obligations of Plaintiffs and the Class are;

    d.    Whether CoSport's representations in its communications regarding refunds are unfair and deceptive in violation of the NJ Consumer Fraud Act;

    e.    Whether CoSport violated the NJ Truth in Consumer Contract, Warranty and Notice Act by refusing to provide any refunds unless consumers agreed to allow CoSport to retain 25% of the amounts paid by Plaintiffs and the Class;

    f.    Whether CoSport's actions have proximately caused an ascertainable loss to Plaintiffs and members of the Class, if so, the proper measure of damages;

    g.    Whether Plaintiffs and the Class are entitled to declaratory relief; and

    h.    Whether Plaintiffs and the Class are entitled to injunctive relief.

74.    **Adequacy:** The named Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because they possess no interest antagonistic to the class members they seek to represent, and because the adjudication of their claims will necessarily decide the identical issues for all other class members. There is nothing peculiar about the Plaintiffs' situations that would make them inadequate class representatives. Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

75.    **23(b)(2):** CoSport has acted and refused to act on grounds generally applicable to the Class, so that final declaratory and injunctive relief will be appropriate with respect to the Class as a whole.

76.    **23(b)(3) Predominance and Superiority:** The common claims and defenses predominate over any individual issues of class members as they were all subject to the same representations and course of conduct. A class action is superior to other methods for the fair and efficient adjudication of this controversy because

the damages suffered by each individual class member are relatively modest compared to the expense and burden of individual litigation. It would be impracticable for each class member to seek redress individually for the wrongful conduct alleged herein. It would be difficult, if not impossible, to obtain counsel to represent Plaintiffs on an individual basis for such small claims. Practically speaking, a class action is the only viable means of adjudicating the individual rights of Plaintiffs and the Class. There will be no difficulty in the management of this litigation as a class action as the legal issues affect a standardized pattern of conduct by Defendant and class actions are commonly used in such circumstances. Furthermore, since joinder of all members is impracticable, a class action will allow for an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

### CLAIMS FOR RELIEF

### COUNT I:
### RELIEF UNDER THE DECLARATORY JUDGMENT ACT
### 28 U.S.C. § 2201, *et seq.*
### (Plaintiffs, on Behalf of Themselves and the Class)

77.    Plaintiffs incorporate Paragraphs 1-67, as if set forth at length herein.

78.    Declaratory relief "is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (4th ed.).

79.    The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., offers a unique mechanism by which a party may seek to remedy and prevent ongoing harm in the form of declaratory and injunctive relief.

80.    Pursuant to 28 U.S.C. § 2201(a), the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." As such, this Court has the power to make binding declarations of the rights and obligations of the parties, and to adjudicate the disputes between them.

81.    There is an actual controversy between Defendant and Plaintiffs concerning the rights and obligations of the parties as follows:

     a.    Whether the contract to purchase event tickets and travel packages from CoSport for the Tokyo Olympic has been frustrated to the point of impossibility;

     b.    Whether CoSport is required to provide a full refund in light of the impossibility;

     c.    Whether Plaintiffs and members of the Class were subject to economic duress by CoSport's conditioning any refund on CoSport's retention of 25% their money;

d.    Whether there was any consideration for the new terms and conditions that CoSport attempted to impose on Plaintiffs and class members;

e.    Whether Plaintiffs and members of the Class were subject to economic duress by CoSport's conditioning any refund on releasing CoSport of all liability;

f.    Whether it is inequitable for CoSport to retain Plaintiffs' and class members' funds while failing to deliver any goods or services;

g.    Whether CoSport made ill-gotten gains by its actions and should be forced to disgorge such gains;

h.    Whether Plaintiffs and the class members are entitled to restitution.

82.    The controversy between the parties is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment and corresponding injunctive relief.

83.    Accordingly, Plaintiffs seek a declaratory judgment from this Court that the impossibility doctrine requires that CoSport immediately provide full refunds to Plaintiffs and members of the Class for their purchases of event tickets and travel

packages and that any purported waivers of class members' rights to obtain a full refund are null and void.

84. These declarations should be disclosed to all affected members of the Class at Defendant's expense.

85. The declaratory relief requested herein will generate common answers that will settle the controversy related to Defendant's actions. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

<u>**COUNT II:**</u>
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. § 56:8-2.1,** *et seq.*
**(Plaintiffs, On Behalf of themselves and the Class)**

86. Plaintiffs incorporate Paragraphs 1-67, as if set forth at length herein.

87. N.J.S.A. §56:8-2 declares that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; …

88. Plaintiffs are both "person(s)" and "consumer(s)" pursuant to N.J.S.A. §56:8-1(d), as they and all class members are natural persons as defined therein.

22

89.     Defendant is a "person" pursuant to N.J.S.A. §56:8-1(d), as it is a business entity, corporation or company as defined therein.

90.     The tickets and accommodations sold by CoSport constitute "merchandise" pursuant to N.J.S.A. §56:8-1(c).

91.     Defendant engages in the sale of merchandise pursuant to N.J.S.A. § 56:8-1(e), as it offers Olympic tickets and accommodations directly to the public for sale.

92.     CoSport engaged in an unconscionable, unfair, deceptive, fraudulent and/or misleading pattern and practice by conditioning refunds on Plaintiffs and class members waiving their rights.

93.     CoSport also engaged in an unconscionable, unfair, deceptive, fraudulent and/or misleading pattern and practice by making misleading or false statements regarding refund eligibility.

94.     CoSport also made false statements in its communications with Plaintiffs and class members, including but not limited to:

    a.    1.    Refund: If you request a refund, you will receive a refund totaling 75 percent of the cost of the package you purchased. Your refund will consist of the face value of each ticket and as much of your payment to secure your rooms the hotel will return. Additionally, because we are beginning to understand significant portions of these funds will be unrecoverable, CoSport will subsidize the remaining portion of your refund so you will receive

23

> a 75 percent refund even if the amount returned by
> the Japanese entities falls short.

(April 6, 2021 Letter).

This statement is false because it implies that the amount of the refund is limited or restricted by the Japanese hotel providers retaining significant portions of the customer's payment. Furthermore, the statement that "CoSport will subsidize the remaining portion of your refund" is also false and deceptive because a reasonable consumer would believe that the Japanese companies were retaining "significant portions" of the customer's payments. This statement is intended to create the false impression that the amount of the refund is beyond CoSport's control and that CoSport is losing money by "subsidizing" the 75% refund.

> b.    Because we are endeavoring to be your ally in this process, we will continue to press the Japanese Government and other entities to return more of your funds. If they do, we also will return that amount, meaning you could receive more than a 75 percent refund. To-date, they have been unwilling to do so.

(April 6, 2021 Letter).

This statement is false because it implies that the "Japanese Government" is only returning 75% of "your funds." The "Japanese Government" has never been given any of the customer's funds related to the tickets and accommodations.

95.    It is unconscionable and deceptive to condition a refund on CoSport's retention of 25% of the funds.

96.    It is unconscionable and deceptive to condition a refund on releasing CoSport from liability when no consideration was provided for that release.

97.    N.J.S.A. § 56:8-2.11 provides that "Any person violating the provisions of the CFA shall be liable for a refund of all monies acquired by means of any practice declared herein to be unlawful."

98.    As a result of Defendant's aforementioned violations, Plaintiffs and the Class suffered an ascertainable loss of amounts paid to CoSport that were not refunded.

99.    Plaintiffs and the Class are entitled to treble damages pursuant to N.J.S.A. § 56:8-19.

100.   In accordance with N.J.S.A. § 56.8-19 and N.J.S.A. § 56.12-17, Plaintiffs and the Class are entitled to attorneys' fees and litigation costs.

## COUNT III:
### VIOLATION OF THE NEW JERSEY TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT ("TCCWNA") N.J.S.A. § 56:12-14, *et seq*.
### (Plaintiffs, On Behalf of themselves and the Class)

101.   Plaintiffs incorporate Paragraphs 1-67, as if set forth at length herein.

102.   The New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA) § 56:12-14, *et seq.*, prohibits sellers from "offer[ing] to any consumer or prospective consumer or enter[ing] into any written consumer contract or giv[ing] or display[ing] any written consumer warranty, notice or sign . . . which includes

any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal Law . . . ." N.J.S.A. § 56:12-15.

103.  Plaintiffs and the Class are "consumers" within the meaning of TCCWNA.

104.  CoSport is a "seller" within the meaning of TCCWNA.

105.  CoSport's Terms and Conditions Agreement is a written agreement between CoSport and Plaintiffs and the Class which is both a "consumer contract" and a "notice" within the meaning of TCCWNA.

106.  Plaintiffs and the Class have a clearly established right to receive a full refund where the purpose of the contract was frustrated to the point of impossibility. However, CoSport has engaged in unconscionable conduct in violation of this clear legal right by trying to force Plaintiffs and other members of the Class to agree to only obtain a 75% refund.

107.  Additionally, CoSport attempted to force Plaintiffs and class members to agree to the following as a condition of obtaining a 75% refund despite their clear legal right to a refund under CoSport's original Terms and Conditions:

> By exercising this option, I also agree to forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with your order. You also agree you have read and understand the refund

process outlined in the accompanying letter, dated April 6, 2021.

108.    Plaintiffs, and all members of the Class, have not received a full refund and may not even receive a 75% refund unless they agree to release CoSport from liability. As a result, Plaintiffs and the Class have suffered harm as a result of CoSport's 75% refund offer, which makes them "aggrieved consumers" within the meaning of N.J.S.A. § 56:12-17.

109.    As a result of Defendant's aforementioned violations, Plaintiffs and the Class suffered ascertainable financial losses equal to the value of the amounts they paid CoSport and which have not been refunded. It is unconscionable for CoSport to attempt to force Plaintiffs and the Class to choose between obtaining a partial refund or no refund at all.

110.    As a result of CoSport's violations of TCCWNA as alleged herein, Plaintiffs and putative class members are entitled to damages pursuant to N.J.S.A. § 56:12-17, including actual damages and statutory damages of not less than $100 per violation, together with reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter an Order:

A.    Certifying this action as a class action as provided by Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiffs to act as class representatives, and appointing the undersigned to act as Class Counsel;

B.      Declaring that CoSport is financially responsible for notifying all class members;

C.      Declaring the rights and obligations of CoSport, Plaintiffs and class members, and awarding compensatory damages including restitution;

D.      For injunctive relief prohibiting CoSport from future violations of the Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, and the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq.*, and requiring CoSport to comply with these statutes and all applicable rules and regulations;

E.      Awarding disgorgement of all amounts not fully refunded to Plaintiffs and all class members;

F.      Awarding actual damages, punitive damages, treble damages pursuant to N.J.S.A. § 56:8-19, and actual and statutory damages pursuant to N.J.S.A. § 56:12-17;

G.      Awarding reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. § 56:8-19, and N.J.S.A. § 56:12-17;

H.      Awarding pre-judgment and post-judgment interest; and

I.      Awarding such other and further relief as Plaintiffs and class members may be entitled to or as the Court deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and the Class demand a trial by jury on all issues so triable.

DATED: June 10, 2021    /s/Jacob M. Polakoff
             Jacob M. Polakoff, Bar No. 035832006
             jpolakoff@bm.net
             BERGER MONTAGUE PC
             1818 Market Street, Suite 3600
             Philadelphia, PA 19103
             Tel. 215.875.3000
             Fax 215.875.4604

             E. Michelle Drake*
             emdrake@bm.net
             BERGER MONTAGUE PC
             1229 Tyler Street NE, Suite 205
             Minneapolis, MN 55413
             Tel. 612.594.5933
             Fax 612.584.4470
             *pro hac vice pending

             VARNELL & WARWICK, P.A.
             Janet R. Varnell**
             Brian W. Warwick**
             1101 E. Cumberland Ave., Suite 201H, #105
             Tampa, Florida 33602
             Telephone: (352) 753-8600
             Facsimile:  (352) 504-3301
             bwarwick@varnellandwarwick.com
             jvarnell@varnellandwarwick.com
             **pro hac vice forthcoming

             **Attorneys for Plaintiffs**