## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SUZANNE CARUSO; APRIL ADAMS; GEORGE PEASLEE; TIFFANY LOYA; and JARED MCCALLISTER, *on behalf of themselves and all others similarly situated*

        Plaintiffs,

  v.

JET SET SPORTS, LLC d/b/a COSPORT,

        Defendant.

Civil Action No.:  3:21-cv-09665

Assigned to: Judge Zahid N. Quraishi

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.    **INTRODUCTION** ......................................................................................1

II.   **BACKGROUND** ......................................................................................4

    A.    The Parties ................................................................................................4

    B.    Plaintiffs purchase Tickets and Accommodations through CoSport.....7

    C.    Plaintiffs are offered a refund for Tickets and Accommodations purchased through CoSport following the Postponement of the 2020 Tokyo Olympics ..................................................................................8

    D.    Plaintiffs are offered a refund for Tickets and Accommodations purchased through CoSport following the Japanese government's decision to ban international spectators from traveling to Tokyo and attending the Olympic Games ............................................................9

III.  **Legal Standard**....................................................................................11

IV.   **Argument**...............................................................................................12

    A.    The express terms of the Refund Agreements bar all claims asserted by Plaintiffs April Adams, George Peaslee, Tiffany Loya and Jared McCallister ............................................................................................12

        1.    The Release Plaintiffs executed an enforceable release of claims against CoSport....................................................................12

        2.    The Release Plaintiffs cannot shield their claims from dismissal by claiming economic duress..................................................15

    B.    Plaintiffs cannot invoke the frustration of purpose doctrine to equitably unwind their contract with CoSport ..................................................18

    C.    Plaintiffs do not state a viable claim under the New Jersey Consumer Fraud Act. .........................................................................................22

    D.    Plaintiffs do not state a claim under the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act..................................................26

V.    **CONCLUSION** ........................................................................................28

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................12

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) .................................................4, 9, 13

*Coba v. Ford Motor Co.*,
  No. 12-1622, 2013 WL 244687 (D.N.J. Jan. 22, 2013)......................23

*Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*,
  93 N.J. 153 (1983) ........................................................................15, 16

*Cooper v. Borough of Wenonah*,
  977 F. Supp. 305 (D.N.J. 1997) .......................................................13, 14

*Cox v. Sears Roebuck & Co.*,
  1387 N.J. 2 (1994) .........................................................................23, 24

*DeBenedictis v. Merrill Lynch & Co.*,
  492 F.3d 209 (3d Cir. 2007)................................................................12

*Domanske v. Rapid-Am. Corp.*,
  749 A.2d 399 (N.J. Super. App. Div. 2000)..................................13, 14

*Dugan v. TGI Fridays, Inc.*,
  231 N.J. 24 (2017) .............................................................................26

*Edwards v. Leopoldi*,
  20 N.J. Super. 43 (1952) .....................................................................20

*Fair Lab. Pracs. Assocs. v. Riedel*,
  No. 14-2581, 2015 WL 3949156 (D.N.J. Jun. 29, 2015) ...................19

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)...............................................................11

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ................................................................................23

*Goldfarb v. Solimine*,
   245 N.J. 326 (2021) ................................................................................13

*Hunt Constr. Group, Inc. v. Hun Sch. of Princeton*,
   No. 08-3550, 2009 WL 1312591 (D.N.J. May 11, 2009)..................................24

*JB Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n,
   Inc.*,
   431 N.J. Super. 233 (2013) ........................................................................18, 19

*Katz v. Ambit Northeast, LLC*,
   No. 20-1289, 2021 WL 2680184 (D.N.J. Jun. 29, 2021) ...................................23

*Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*,
   207 N.J. 428 (2011)................................................................................26

*Levy Grp., Inc. v. Land, Air, Sea & Rail Logistics, LLC*,
   No. 20-3839, 2021 WL 288567 (D.N.J. Jan. 28, 2021)....................................15

*Oliver v. Wincor Nixdorf Corp.*,
   No. 15-2921, 2018 WL 515855 (D.N.J. Jan. 23, 2018)....................................15

*Oscar v. Simeonidis*,
   800 A.2d 271 (N.J. Super. App. Div. 2002)................................................14, 17

*Perkins v. DaimlerChrysler Corp.*,
   383 N.J. Super. 99 (2006) ................................................................................25

*Peter W. Kero Inc. v. Terminal Construction Corp.*,
   6 N.J. 361 (1951) ................................................................................14

*Platinum Links Entm't v. Atl. City Surf Prof'l Baseball Club, Inc.*,
   No. 02-4106, 2006 WL 1459986 (D.N.J. May 23, 2006)..................................19

*Recchia v. Kellogg Co.*,
   951 F. Supp. 2d 676 (D.N.J. 2013) ............................................................15, 16

*Sauter v. Fed. Home Loan Bank of N.Y.*,
   2009 WL 2424689 (D.N.J. Aug. 5, 2009)..................................................15, 17

*Shafer v. Cronk*,
    532 A.2d 1131 (N.J. Super. Ct. App. Div. 1987) ................................................13

*Unihealth v. U.S. Healthcare*,
    14 F. Supp. 2d 623 (D.N.J. 1998) ..................................................................19, 20

## Other Authorities

Fed. R. Civ. P. 8(a) .......................................................................................................12

Fed. R. Civ. P. 9(b) .......................................................................................................23

Fed. R. Civ. P. 12(b)(6) ................................................................................................11

Restatement (Second) of Contracts Section 265................................................19, 20

I. **<u>INTRODUCTION</u>**

The COVID-19 pandemic has disrupted life across the globe for almost two years. Unfortunately, the 2020 Olympic Games did not escape that disruption unscathed. In an effort to quell the spread of the virus in Tokyo, Japan (the host city), and to ensure a safe environment for the world's athletes, the Japanese government—in conjunction with the Tokyo Organizing Committee for the Olympic Games ("TOCOG"), the International Olympic Committee ("IOC"), the International Paralympic Committee ("IPC"), and the Tokyo Metropolitan Government—made two decisions relevant to this litigation. The first was to postpone the 2020 Olympic Games for one year. The pandemic, however, did not abate during that time. Thus, in March of 2021, a second decision was made. That decision was to ban international spectators from traveling to Tokyo "to ensure [a] safe and secure Games for all participants and the Japanese public." This was obviously a disappointing development for international spectators who had already purchased tickets for Olympic events and accommodations in Tokyo. It was particularly disappointing for international spectators, like Plaintiffs, who apparently did not purchase travel insurance to protect against the risk of loss related to this development.

CoSport, the exclusive reseller of Olympic tickets and accommodations in the United States, did not stand by idly. It acted swiftly to protect its customers,

including those who ignored its recommendation to purchase travel insurance. It lobbied the Japanese government and Olympic-related decision makers to fully reimburse its customers. Unfortunately, CoSport's efforts were not entirely successful. While TOCOG, the entity responsible for the sale of tickets, agreed to refund the face value of all tickets sold, Japanese accommodation providers would not commit to refund the lion's share of customer funds. For these reasons, many customers were to be left with refunds that were less, and sometimes significantly less, than what was paid.

Nevertheless, CoSport was undeterred. It acted to ensure that its customers, despite contractual restrictions, had the opportunity to recover all, or at least a significant portion of, their funds. Specifically, CoSport offered, at great expense and at its own detriment, to provide its customers a 75% cash refund or a 100% credit refund of their purchases. In exchange for that guaranteed refund, CoSport asked customers to, among other things, release all claims against it arising from their purchases. An overwhelming majority of CoSport's customers—including four of the five individual Plaintiffs bringing the above-captioned suit—agreed to this good faith exchange. In fact, pursuant to these refund requests, ***CoSport has already provided cash refunds in excess of $23,200,000 to its customers***. It also intends to refund upwards of $9,000,000 more in the coming weeks and months.

No good deed goes unpunished. Despite CoSport's efforts, five of its customers filed this putative class action premised on a malicious accusation that is wholly unsupported by fact, law, or logic. Contrary to Plaintiffs' allegations, CoSport did not make an untold windfall on the Olympic Games. Rather, absent any legal obligation to do so, CoSport reached into its own pocket and guaranteed its customers refunds they were otherwise unlikely to receive. Plaintiffs call that unlawful conduct and fraud. It is not.

And despite the tenor and tone of Plaintiffs' allegations, CoSport is not to blame for either the COVID-19 pandemic or the relevant Olympic committees' decision to ban international spectators. In other words, CoSport did not cause Plaintiffs' loss. To the contrary, CoSport clearly and explicitly informed Plaintiffs from the outset of the risk that they would be unable to travel to the Games and recommended that they purchase insurance to protect against that possibility. Plaintiffs decided to accept the risk and apparently ignored CoSport's recommendation.

CoSport still remains ready, willing and able to provide Plaintiffs with the same refund offer it provided to all customers—a refund that Plaintiffs Adams and McCallister agreed to receive, and Plaintiffs Peaslee and Loya already received. But CoSport will not allow Plaintiffs to take advantage of and extort its good faith efforts.

It therefore moves to dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice.

## II.   <u>BACKGROUND</u>

### A.   **The Parties**

CoSport, a NJ-based limited liability corporation, is the exclusive reseller of tickets and accommodations for the Tokyo Olympics ("Tickets and Accommodations") in the United States. Am. Compl. at ¶¶ 11, 16; *see also* Terms and Conditions of Sale Tokyo 2020 Olympic Games ("Terms and Conditions"), Ex. A, at 1 (defining "Authorized Ticket Reseller").[1] Tickets for Olympic events are authorized and provided by the Tokyo Organizing Committee for the Olympic Games ("TOCOG"), and Accommodations are most frequently provided by entities in Japan (*e.g.*, the Keio Plaza Hotel). *See id.*, at 5 ("[CoSport] is the [Authorized Ticket Reseller] for residents in the Represented Territories."); 10 (noting "accommodations will be provided at pre-determined hotels as specified on the corresponding Product description."); *see also* Am. Compl. at ¶ 41. CoSport is permitted to charge a small fee on purchases of Tickets and Accommodations to

---

[1] Copies of the published Terms and Conditions at the time each Plaintiff purchased their Tickets and Accommodations are attached as Exhibits A-C. In all relevant and material respects, these agreements are identical. They may be considered by the Court as they are relied upon and integral to Plaintiffs' Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.); Compl. at ¶ 22.

cover, for example, handling, currency conversion fees, currency fluctuations, and merchant fees. *See, e.g.*, Terms and Conditions, Ex. A, at 10. These fees are all capped by TOCOG. *Id.*[2]

Plaintiffs are five differently situated individuals in the United States who purchased various sets of Tickets and Accommodations for the Tokyo Olympics through CoSport. *See* Am. Compl. at ¶¶ 6-10, 46, 51, 57, 62:

- **<u>Plaintiff Caruso</u>** allegedly purchased a "travel package" through CoSport, which included a five-night stay at the Keio Plaza Hotel and tickets for select Olympic events, on December 2, 2019. *Id.* at ¶¶ 40-41. She alleges she paid $16,375 for her Tickets and Accommodations. *Id.* "[G]iven the [Japanese government's] ban on international spectators," Plaintiff Caruso alleges it is "impossible" for her to travel to the Tokyo Olympics. *Id.* at ¶ 42. Plaintiff Caruso does not allege that she has requested a refund for her Tickets and Accommodations from CoSport. *Id.* at ¶ 43.

- **<u>Plaintiff Peaslee</u>** allegedly purchased "event tickets and a travel package for the Tokyo Olympic Games" through CoSport on December 2, 2019 for $16,195. *Id.* at ¶ 57. As detailed further below, following the initial postponement of the Tokyo Olympics, Plaintiff Peaslee requested and received a refund for his Accommodations and many of his Tickets. *Id.* at ¶¶ 58-59. In exchange for that refund, Plaintiff Peaslee agreed to "forever discharge and release CoSport and its affiliates from

---

[2] Plaintiffs allege that CoSport's position as the exclusive reseller of Tickets for the Olympic Games "translates to higher prices for consumers and it directly impacts ticket availability." Compl. at ¶ 21. That is categorically false. The face value of Tickets is set by TOCOG, which caps any additional fees retained by CoSport at ***approximately $50*** per transaction. *See, e.g.*, Terms and Conditions, Ex A., at 1 ("The Authori[z]ed Ticket Reseller may charge a reasonable handling fee per Ticket, such charge to be not more than twenty percent (20%) of the converted face value of the Ticket, up to a capped amount of (JPY) 6,000 per Ticket.").

any and all claims arising out of or in connection with [his] order." *Id.* at ¶¶ 33, 58.

- **<u>Plaintiff Loya</u>** allegedly purchased "event tickets and a travel package for the Tokyo Olympic Games" through CoSport in July 2019 for $13,384. *Id.* at ¶ 62. As detailed further below, following the initial postponement of the Tokyo Olympics, Plaintiff Loya requested and received a refund for her Accommodations and Tickets. *Id.* at ¶¶ 63, 64. In exchange for that refund, Plaintiff Loya agreed to "forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with [her] order." *Id.* at ¶¶ 33, 63.

- **<u>Plaintiff Adams</u>** made two purchases through CoSport for "event tickets and a travel package totaling $87,708." *Id.* at ¶ 46. As detailed further below, Plaintiff Adams elected to keep her tickets following the initial postponement of the Tokyo Olympics. However, after the Japanese government's decision to "ban [] international spectators" from attending the Tokyo Olympics, she requested a refund from CoSport. *Id.* at ¶¶ 47-48. In exchange for that refund, Plaintiff Adams agreed to "forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with [his] order." *Id.* at ¶¶ 33, 48. CoSport is prepared to issue Plaintiff Adams the agreed refund once she confirms her address.

- **<u>Plaintiff McCallister</u>** made two purchases through CoSport for "event tickets and a travel package totaling $28,165.50." *Id.* at ¶ 51. As detailed further below, Plaintiff McCallister elected to keep his tickets following the initial postponement of the Tokyo Olympics. However, after the Japanese government's decision to "ban [] international spectators" from attending the Tokyo Olympics, he requested a refund from CoSport. *Id.* at ¶¶ 52, 54. In exchange for that refund, Plaintiff McCallister agreed to "forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with [his] order." *Id.* at ¶¶ 33, 53. CoSport is prepared to issue Plaintiff McCallister the agreed to refund once he confirms his address.

**B.      Plaintiffs purchase Tickets and Accommodations through CoSport**

Tickets for the Tokyo Olympics went on sale in the summer of 2019. *Id.* at

¶ 22. Customers were able to purchase Tickets and Accommodations through

CoSport's website or through a travel agent. *Id.* No matter the method of purchase,

the sale of Tickets and Accommodations were subject to CoSport's Terms and

Conditions, which were published on CoSport's website. *Id.* As relevant here, and

contrary to Plaintiffs' allegations, these Terms and Conditions not only limit a

purchaser's right to a refund, but also explicitly "address a scenario where

international spectators [are] banned from attendance." *Id.*; *but see* Terms and

Conditions, Ex. A., at 4. Specifically, the Terms and Conditions provide:

> *[CoSport] is not responsible* for circumstances that may arise
> subsequent to the purchase of Product(s) *that may make it
> inconvenient or impossible for Customer to travel or use the
> Product(s)*, including without limitation, acts of God, financial
> circumstances of the Customer, climatic conditions, breakdown of
> machinery or equipment, *acts of government or other authorities*, wars
> whether or not declared, civil disturbances, strikes, riots, thefts,
> *epidemics, quarantines, medical or customs regulations*, terrorist
> activities, or any other actions, omissions or conditions beyond
> [CoSport]'s control. *Neither [CoSport] nor any of its affiliates or
> subsidiaries shall be or become liable or responsible for any
> additional expenses or liabilities or injuries sustained or incurred by
> Customer as a result of any of the aforementioned causes*.

*See, e.g.*, Terms and Conditions, Ex. A, at 4 (emphasis added). To "protect[] against

such contingencies," CoSport recommended that "Customer[s] maintain suitable

insurance to cover these possibilities." *Id.* The Terms and Conditions further

provided—in a provision titled "Travel to Host City"—that CoSport "accepts no responsibility or liability whatsoever . . . if [purchasers] are refused entry at customs/immigration." *Id.* at 3. Plaintiffs do not allege that they took these travel-related risks seriously or purchased the recommended insurance.

### C.   **Plaintiffs are offered a refund for Tickets and Accommodations purchased through CoSport following the Postponement of the 2020 Tokyo Olympics**

On March 23, 2020, the Tokyo Olympics were rescheduled from the summer of 2020 to the summer of 2021 due to the Covid-19 pandemic. Am. Compl. at ¶ 23. As a result, CoSport offered its customers the ability to: (1) cancel their Ticket orders and receive a face value refund as provided by the Terms and Conditions; (2) cancel their Accommodation order and receive a guaranteed 75% refund; or (3) cancel their Accommodation order and attempt to resell their Accommodations and receive 95% of the resale price once purchased by a new customer. *See, e.g.*, *id.* at ¶ 58; *see also* Peaslee Postponement Releases, Ex. D; Loya Postponement Releases, Ex. E; Message to HTP Customers Concerning Postponement Refund, Ex. F.[3] In exchange for these cancellation options, which go beyond those provided by the Terms and Conditions, customers agreed to "forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with [their] order."

---

[3] These exhibits can be considered by the Court when considering the instant motion to dismiss. *See supra* n.1.

*See, e.g.*, Peaslee Postponement Releases, Ex. D; Loya Postponement Releases, Ex. E. Plaintiffs Peaslee and Loya requested and received refunds through this offering and released CoSport. *Id.*; *see also* Am. Compl. at ¶¶ 58-59, 63-64, 67.

### D.   Plaintiffs are offered a refund for Tickets and Accommodations purchased through CoSport following the Japanese government's decision to ban international spectators from traveling to Tokyo and attending the Olympic Games

On March 20, 2021, the Japanese Government, along with the IOC, IPC, and TOCOG, decided to preclude international spectators from attending any Olympic events. *Id.* at ¶ 24. The Japanese government made clear that "[p]eople who are involved in the Olympics in some way may be allowed to enter the country, whereas regular visitors will not be able to." *Id.* This decision was made due to the Covid-19 pandemic to "ensure [a] safe and secure Games for all participants and the Japanese public." *Id.*

Following this "travel ban" imposed by the Japanese government in conjunction with TOCOG, CoSport took steps to actively protect its customers. *Id.* at ¶ 27; *see also* April 6, 2021 Letter and Release to CoSport Customers ("4/6/21 Letter"), Ex. I, at 1-2.[4] On April 6, 2021, CoSport notified its customers, that, while "[it] and other Olympic entities encouraged the Japanese Government and organizers

---

[4] This Letter may be considered by the Court because it is relied upon and integral to Plaintiffs' Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; Am. Compl. at ¶¶ 28, 33-34.

to refund all costs incurred by international spectators, they decided not to." *See* 4/6/21 Letter, Ex. I, at 1. As a result, CoSport explained that "significant portions of [a customer's purchase price would] be unrecoverable." *Id*. Nevertheless, CoSport (despite not being contractually obligated to do so) committed to "subsidize . . . [customers'] refund[s] so [they would] receive a 75% [cash] refund even if the amount returned by the Japanese entities falls short." *Id*. CoSport also offered customers another option in the form of "credit equaling 100 percent of the amount of [their] purchase toward purchases related to future Olympic Games or other CoSport-ticketed events." *Id*. at 4. That is, in light of the "travel ban," CoSport offered to guarantee Plaintiffs a 75% cash refund or a 100% credit refund. In exchange for that guarantee, CoSport asked Plaintiffs to "forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with [their] order." *Id.* at 5.[5] As indicated above, Plaintiffs Adams and

---

[5] Plaintiffs also allege that CoSport is the "holder of Plaintiffs' money" and would "keep" the difference between the 75% refund offered and the total amount paid by a purchaser. Am. Compl. at ¶¶ 29, 31-32. They further suggest that CoSport "received a full refund for all of its sales to United States customers because it stated 'all orders were cancelled as a result of the international spectator ban imposed by the Japanese's Government.'" *Id.* at ¶ 36. Not one fact supports these threadbare conclusions. This is because no such facts exist. Indeed, these allegations are belied by the documents cited in the Amended Complaint. For example, as detailed in the 4/6/21 Letter and Terms and Conditions, the lion's share of funds obtained by CoSport for Tickets and Accommodations are passed to non-parties. *See, e.g.*, Terms and Conditions, Ex. A, at 1 (defining "Handling Fee" to permit CoSport to retain up to $50 or 6,000 yen per ticket purchase), 10 (noting additional fees charged for Tickets). Thus, CoSport cannot be fairly considered the "holder" or "keep[er] of

McCallister accepted that offer and agreed to release CoSport. Am. Compl. at ¶¶ 48, 53; *see also* Adams Release, Ex. G; McCallister Release, Ex. H.

To date, CoSport has refunded over $23,200,000 to its customers. Plaintiffs Peaslee and Loya, for example, have already collectively received refunds, which included a CoSport subsidy of more than $6,000. *See id.* at ¶¶ 59; 67. The remaining Plaintiffs—once they either request a refund (Plaintiff Caruso) or decide to confirm their mailing addresses (Plaintiffs Adams and McCallister)—are scheduled to collectively receive nearly $100,000, which includes a CoSport subsidy in excess of $30,000.   While CoSport undoubtably sympathizes with and shares Plaintiffs' frustration at not being able to attend the Tokyo Olympics, there is simply no plausible claim of wrongdoing here, and this lawsuit is nothing more than a shakedown for additional funds never promised or contractually owed by CoSport.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556

---

Plaintiffs' funds. Moreover, Plaintiffs, armed with the relevant contracts, do not cite a single term to suggest that the "cancellation" of an event requires TOCOG, merchants, non-party accommodation providers, or others currently holding Plaintiffs' funds to return all of those funds to CoSport. Of course, this is because no such term exists. These allegations should therefore be cast aside when analyzing this Motion.

U.S. 662, 678 (2009)); *see* Fed. R. Civ. P. 8(a). It must state "nonconclusory factual allegation[s]" to support a plausible inference that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 680. Although courts must accept as true all well-pleaded factual allegations and the reasonable inferences drawn therefrom, *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007), this does not include legal conclusions couched as factual allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Against this backdrop, and for the reasons stated below, Plaintiffs have not alleged facts sufficient to state any claim against CoSport.

## IV.  ARGUMENT

### A.  The express terms of the Refund Agreements bar all claims asserted by Plaintiffs April Adams, George Peaslee, Tiffany Loya and Jared McCallister

#### 1.  The Release Plaintiffs executed an enforceable release of claims against CoSport

Plaintiffs Adams, Peaslee, Loya, and McCallister (the "Release Plaintiffs") concede, as they must, that they agreed to "forever discharge and release CoSport and its affiliates from any and all claims arising out of or in connection with" their purchase of Tickets and Accommodations for the Olympic Games in exchange for a guaranteed refund. *See* Am. Compl. at ¶ 48, 53, 58, and 64.[6] Yet these Plaintiffs now

---

[6] The signed forms completed by each of the Release Plaintiffs are attached as Exhibits D, E, G, and H. These can be considered by the Court on this Motion to Dismiss because they are integral to and referenced in the Amended Complaint. *See*

assert claims against CoSport concerning those very purchases. Those claims are barred by the express terms of a valid contract, enforceable under New Jersey law. Accordingly, all claims asserted by the Release Plaintiffs should be dismissed with prejudice.

The executed releases are enforceable against each of the Release Plaintiffs. Under New Jersey law, a release is treated like any other form of contract. *See Domanske v. Rapid-Am. Corp.*, 749 A.2d 399, 402 (N.J. Super. App. Div. 2000) ("[A] release is merely a form of contract and the general rules that apply to contract interpretation apply to releases."); *Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 311 (D.N.J. 1997). As such, for the at-issue releases to be enforceable, they must have been (1) part of an offer made by CoSport, (2) accepted by the Release Plaintiffs, and (3) supported by consideration. *See Shafer v. Cronk*, 532 A.2d 1131, 1133 (N.J. Super. Ct. App. Div. 1987) (noting that a settlement constitutes a "valid and enforceable contract" where there exists an "offer and acceptance based upon consideration."); *see also Goldfarb v. Solimine*, 245 N.J. 326, 339 (2021) (outlining the "basic features" of a contract, generally). Each element is satisfied here.

***First***, the Release Plaintiffs allege that CoSport offered a guaranteed refund in exchange for, among other things, a release. *See* Am. Compl. at ¶¶ 28-29. ***Second***,

---

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *see also* Am. Compl. at ¶ 48, 53, 58, and 64.

the Release Plaintiffs accepted that offer by signing the release and requesting the guaranteed refund. *See* Am. Compl. at ¶¶ 48, 53, 58, and 64; *see also Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 311 (D.N.J. 1997) (noting that, "[i]n New Jersey, a signed release carries considerable weight.").[7] **Third**, the Release Plaintiffs' allegations show that CoSport offered to go above and beyond its prior contractual obligations, which constituted valid consideration for the release; namely, by offering the putative class a "refund of 75 percent of the funds paid" or "a credit for the total amount of the purchase for use at future Olympic Games." *See* Am. Compl. at ¶ 28. As such, the consideration offered in exchange for the release is far beyond "a very slight advantage to one party, or a trifling inconvenience to the other," which is all New Jersey law demands for "sufficient consideration to support a contract." *Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. Super. App. Div. 2002) ("[C]onsideration need not be monetary or substantial."). The releases are therefore enforceable against the Release Plaintiffs, and dismissal is warranted.[8]

---

[7] The Release Plaintiff's signing the releases create "a conclusive presumption [] that [they] read, understood and assented to its terms[.]" *Peter W. Kero Inc. v. Terminal Construction Corp.*, 6 N.J. 361, 368 (1951). In other words, they cannot now "complain that [they] did not comprehend the effect of [their] act in the signing." *Id.*

[8] Plaintiffs may argue that the contract is not enforceable because they "feared [they] would not receive any refund at all if [they] did not." *See* Am. Compl. at ¶ 48, 53, 58, and 64. This argument is frivolous. Even assuming that such a fear was well-founded, it has no bearing on whether or not the release is enforceable. "A contracting party is bound by the apparent intention he or she outwardly manifests to the other party." *Domanske*, 749 A.2d at 402. Here, that intent was clear: to

2. <u>The Release Plaintiffs cannot shield their claims from dismissal by claiming economic duress</u>

The Release Plaintiffs cannot salvage their claims against CoSport by claiming that they signed the release under economic duress. First, in New Jersey, "a party alleging economic distress must show that he has been [(1)] the victim of a wrongful or illegal act or threat" that (2) "deprived the victim of his unfettered will." *Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 175–76 (1983); *Levy Grp., Inc. v. Land, Air, Sea & Rail Logistics, LLC*, No. 20-3839, 2021 WL 288567, at *4 (D.N.J. Jan. 28, 2021). Plaintiffs fail on both fronts. They do not plausibly allege CoSport engaged in any wrongful act. Rather, they simply complain that CoSport exerted economic pressure, by way of a subsidized guaranteed refund, to obtain the at-issue release. But "economic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release." *Oliver v. Wincor Nixdorf Corp.*, No. 15-2921, 2018 WL 515855, at *6 (D.N.J. Jan. 23, 2018); *see also Recchia v. Kellogg Co.*, 951 F. Supp. 2d 676, 683-84 (D.N.J. 2013); *Levy*, 2021 WL 288567 at *4 (collecting cases); *Sauter v. Fed. Home Loan Bank of N.Y.*, 2009 WL 2424689, at *9 (D.N.J. Aug. 5, 2009) ("Merely taking advantage of another's financial difficulty, however, is not duress."). And, as

---

receive a guaranteed refund in exchange for a release of claims against CoSport. Plaintiffs cannot now change their tune in an attempt to extort CoSport for monies it does not possess.

evidenced by the Amended Complaint, some customers (including Plaintiff Caruso) did not request a refund or sign the release. So, it is not plausible to suggest that customers were uniformly "deprived of [their] unfettered will."

Second, CoSport did not contribute to or cause Plaintiffs' current financial hardship. To invoke the economic duress doctrine, a party "alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion." *Continental Bank*, 93 N.J. at 177; *see also Recchia*, 951 F. Supp. 2d at 683. The Release Plaintiffs concede that their financial difficulty was caused by "the Japanese organizers, along with the International Olympic Committee, [who] banned international spectators from attending any Olympic events." *See* Am. Compl. at ¶ 24. That is **not** CoSport. Thus, while Plaintiffs "accuse" CoSport "of coercion," they admit CoSport did not contribute to or cause their loss. In fact, if anyone is to blame for Plaintiffs current hardship (aside from a global pandemic, TOCOG, and the Japanese government), it is Plaintiffs themselves. They were advised by CoSport to purchase insurance to cover this *exact* risk of loss. *See* Terms and Conditions, Ex. A, at 4. But they refused. They therefore cannot invoke economic duress to avoid the release and sustain their claims.

Finally, the Release Plaintiffs' economic duress claim is precluded by the fact that the release was supported by adequate consideration. New Jersey courts will not find economic duress "where there is adequate consideration." *Recchia*, 951 F. Supp.

2d at 683. As explained above, in exchange for the release, Plaintiffs received something to which they were not previously entitled; namely, a guaranteed refund (75% cash or 100% credit) from CoSport.[9] Indeed, Release Plaintiffs Loya and Peaslee have already received a check from CoSport that included a $6,273 subsidy. *See* Am. Compl. ¶¶ 59, 67. The remaining Release Plaintiffs will be receiving a combined their subsidized refunds, shortly.[10] Thus, the adequacy of consideration supporting the release cannot be fairly questioned as a matter of New Jersey law. *See Oscar*, 352 N.J. Super. at 485. For this reason, the Release Plaintiffs cannot shield their claims from dismissal by reference to their self-serving construction of economic duress.

---

[9] As described in greater detail below, the Terms and Conditions governing the Plaintiffs' purchases provides limited opportunity for refund. For example, a refund is permitted when a product is listed on CoSport's website with an "incorrect price or with incorrect information due to an error," or when an order is not fully processed due to a technical "system failure." *See, e.g.*, Terms and Conditions, Ex. A, at 3. Those circumstances are not at issue here. It also provides for a refund of the face value of Tickets in the event of a cancellation. *Id.* at 8 ("In the case that a Ticket to a cancelled Event by TOCOG is eligible for a refund, the refund shall not exceed the face value of the Ticket for the cancelled Session."). As Plaintiffs Loya and Peaslee demonstrate, when requested, CoSport has and will continue to provide face value Ticket refunds as it receives funds from TOCOG. *See* Compl. at ¶¶ 59, 67.

[10] The checks for these Plaintiffs have yet to be sent to Plaintiffs because they have not confirmed their addresses.

**B.    Plaintiffs cannot invoke the frustration of purpose doctrine to equitably unwind their contract with CoSport[11]**

All of the named Plaintiffs (not just the Release Plaintiffs) assert that they are entitled to a judgement declaring that they are owed a full, 100%, refund of the purchase price of their Tickets and Accommodations under the equitable doctrine of frustration of purpose. They are wrong. As Plaintiffs recognize, their purchase of Tickets and Accommodations through CoSport is governed by a written agreement, the "Terms and Conditions of Sale Tokyo 2020 Olympic Games." Am. Compl. at ¶ 22. That agreement explicitly provides that CoSport *is not liable* for any event following the purchase of Tickets and Accommodations that rendered it "impossible" for purchasers, like Plaintiffs, to travel to the Olympic Games. *See* Terms and Conditions, Ex A, at 3-4. The Terms and Conditions therefore made clear that customers like Plaintiffs assumed the risk that they would be prevented from

---

[11]    Plaintiffs oscillate between referring to the equitable doctrines of impossibility and frustration of purpose. *See, e.g., C*ompl. at ¶¶ 3, 25, 35, 44, 73a; 83. Under New Jersey law, the impossibility doctrine, as the name implies, requires performance to be "impossible, or at least inordinately more difficult." *JB Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc*., 431 N.J. Super. 233, 246 (2013); *id.* at 245 ("The respective concepts of impossibility and frustration of purpose are, in essence, doctrinal siblings."). Because the Parties performed their obligations under the contract (*i.e.*, Plaintiffs paid for and CoSport arranged for ticketing and accommodations), the impossibility doctrine is of little import here. For clarity's sake, CoSport will proceed under the assumption that Plaintiffs' intended to assert a claim by reference to the frustration doctrine. If Plaintiffs do intend to raise a claim premised on impossibility, it fails for the same reasons detailed below.

traveling to Tokyo at the time of sale. *Id.* For this reason, CoSport recommended that purchasers acquire insurance to protect against any travel-related loss. *Id.* at 4. Plaintiffs ignored CoSport's recommendation. Because Plaintiffs explicitly assumed the risk of loss associated with their inability to travel to Tokyo for the Olympic Games, the equitable doctrine of frustration of purpose is not implicated.[12] Accordingly, Counts I and III, premised on the frustration doctrine, should be dismissed with prejudice. *See, e.g.*, *id.* at ¶¶ 3, 83, 106

Courts in New Jersey follow Section 265 of the Restatement (Second) of Contracts when analyzing whether a party to a contract can invoke the equitable doctrine of frustration of purpose. *See Unihealth v. U.S. Healthcare*, 14 F. Supp. 2d 623, 634 (D.N.J. 1998); *J.B. Mgmt.*, 431 N.J. Super. at 246; *Fair Lab. Pracs. Assocs. v. Riedel*, No. 14-2581, 2015 WL 3949156, at *4, 6 (D.N.J. Jun. 29, 2015); *Platinum Links Entm't v. Atl. City Surf Prof'l Baseball Club, Inc.*, No. 02-4106, 2006 WL 1459986, at *7 (D.N.J. May 23, 2006).  That section provides:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the

---

[12] An assumption of travel-related risk also precludes Plaintiffs claim insofar as it is premised on the impossibility doctrine, *supra* n. 11. *See* 2d Restmt. § 261, cmt. c ("A party may, by appropriate language, agree to perform in spite of impracticability that would otherwise justify non-performance."); § 264, cmt. a (noting that impossibility resulting from "foreign governmental regulation or order" will limit performance *unless* "the language or the circumstances [of the agreement] indicate the contrary.") "The rule stated in this Section does not apply in the language or the circumstances indicate the contrary.

> contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts ("2d Restmt.") § 265 (1981). Based on this language, courts and commentators agree that there are three necessary elements a party must establish to invoke the frustration doctrine. *See Unihealth*, 14 F. Supp. 2d at 634-35; *accord* 2d Restmt. § 2665 cmt. a. **First**, the allegedly frustrated purpose must have been "a principal purpose of that party in making the contract." 2d Restmt. § 2665 cmt. a. The purpose must be "so completely the basis of the contract that . . . without it the transaction would make little sense." *Id.* **Second**, the frustration must be substantial. *See Unihealth*, 14 F. Supp. 2d at 635. This requires the frustration inducing event to be "so severe that it is not fairly to be regarded as within the risks that [the parties] assumed under the contract." 2d Restmt. § 2665 cmt. a. **Third**, the party invoking the doctrine must show that they did not "assum[e] the risk of the occurrence of the frustrating event." *Id.*; *see also Unihealth*, 14 F. Supp. 2d at 635 (citing *Edwards v. Leopoldi*, 20 N.J. Super. 43, 53 (1952). As the New Jersey Superior Court has aptly explained, equitable doctrines do not exist to remedy "hardship arising from bad judgment . . . or from a change in circumstances or the result of subsequent events, where [the frustrating event] should have been in the contemplation of the parties as possible contingencies when they entered in the contract." *Edwards*, 20 N.J. Super at 53.

Plaintiffs' attempt to weaponize the frustration doctrine fails because they assumed the risk of an inability to travel to Tokyo for the Olympic Games. Plaintiffs allege that prior to the purchase of their Tickets and Accommodations, CoSport published Terms and Conditions on its website. *See* Am. Compl. at ¶ 22. These Terms and Conditions, which purchasers were required to acknowledge at the time of sale, were available to all purchasers and governed the relationship between the purchaser (*i.e.*, Plaintiffs) and CoSport. *See id.* at ¶¶ 22, 105. Notably, Plaintiffs do not allege the Terms and Conditions are unenforceable. Quite the contrary. Plaintiffs acknowledge that the provisions of the Terms and Conditions are binding. *See, e.g.*, Am. Compl. at ¶ 15 (citing the choice of law provision of the Terms and Conditions to require this matter be venued in New Jersey). To manufacture a claim against CoSport here, they allege that these enforceable Terms and Conditions contain "no term . . . address[ing] a scenario where international spectators were banned from attendance." *Id.* That may have helped their cause if true. But, it's not.

The Terms and Conditions make clear that the risk alleged—Plaintiffs' inability to enter Japan and attend the Olympic Games due to a government-imposed travel restriction—is borne by Plaintiffs. For example, in a provision titled "Travel to Host City," the Terms and Conditions provide that CoSport "accepts no responsibility or liability whatsoever . . . if [purchasers] are refused entry at customs/immigration." *Id.* at 3. The Terms and Conditions also explain that:

> [CoSport] is not responsible for circumstances that may arise subsequent to the purchase of Product(s) ***that may make it inconvenient or impossible for Customer to travel or use the Product(s)***, including without limitation, acts of God, financial circumstances of the Customer, climatic conditions, breakdown of machinery or equipment, ***acts of government or other authorities***, wars whether or not declared, civil disturbances, strikes, riots, thefts, ***epidemics, quarantines, medical or customs regulations***, terrorist activities, or any other actions, omissions or conditions beyond [CoSport]'s control. Neither [CoSport] nor any of its affiliates or subsidiaries shall be or become liable or responsible for any additional expenses or liabilities or injuries sustained or incurred by Customer as a result of any of the aforementioned causes.

*See, e.g.*, Ex. A, at 4. To "protect[] against such contingencies," CoSport recommended that "Customer[s] maintain suitable insurance to cover these possibilities." *Id.* To be clear, this means that CoSport not only informed Plaintiffs that they bore the risk associated with the *exact* frustration inducing event alleged here, but also recommended that Plaintiffs take steps to insure against that risk. Plaintiffs accepted these risks and appear to have ignored CoSport's recommendation. Thus, Plaintiffs' attempt to blame CoSport for their current situation falls flat. Because they cannot establish the second or third elements necessary to invoke the frustration doctrine, Counts I and III should be dismissed with prejudice.

### C. Plaintiffs do not state a viable claim under the New Jersey Consumer Fraud Act.

To sustain a claim under the CFA, a plaintiff must adequately allege: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between

the unlawful conduct and the loss." *Katz v. Ambit Northeast, LLC*, No. 20-1289, 2021 WL 2680184, at *6 (D.N.J. Jun. 29, 2021). In furtherance of Rule 9(b)'s heightened pleading requirements, federal courts in New Jersey also require that a plaintiff allege "(1) a specific false representation or omission of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff suffered an ascertainable loss as a result of the misrepresentation." *Coba v. Ford Motor Co.*, No. 12-1622, 2013 WL 244687, at *8 (D.N.J. Jan. 22, 2013); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (applying Fed. R. Civ. P. 9(b) to CFA claims). Plaintiffs fall woefully short of this standard.

First, Plaintiffs do not allege any unlawful conduct. Unlawful conduct falls "into one of three general categories: (1) affirmative acts; (2) knowing omissions; and (3) regulation violations." *Cox v. Sears Roebuck & Co.*, 1387 N.J. 2, 17 (1994). Plaintiffs do not even attempt to allege a knowing omission or a regulatory violation. Instead, the totality of Plaintiffs' CFA claim rests on manufactured, malicious, and factually barren allegations that CoSport misrepresented the availability (or unavailability) of a full cash refund with plans to pocket the difference between the amount paid by Plaintiffs and the amount to be refunded. *See* Am. Compl. at ¶¶ 92-

95.[13] No facts have been alleged to support this accusation. Nor do any such facts exist. Indeed, when stripped of its conclusory allegations, the Amended Complaint shows only that CoSport offered to subsidize the losses its customers would realize due to their decision not to purchase insurance for their travel to Japan. *See* Am. Compl. at ¶ 28; *see also* 4/6/21 Letter, Ex. I, at 1.[14] This hardly constitutes fraud, much less unlawful conduct. As such, Plaintiffs' CFA claim is not cognizable.

A review of the Terms and Conditions further illustrates the implausibility of Plaintiffs' current claims. The Terms and Conditions provide for a refund in select circumstances, which are not present here. For example, CoSport can offer a "full refund," "at [its] sole discretion" when a product is listed on its website with an "incorrect price or with incorrect information due to an error." *See* Terms and

---

[13] To the extent Plaintiffs are alleging that CoSport is in breach of its Terms and Conditions, that is not actionable under the CFA. *See, e.g.*, *Hunt Constr. Group, Inc. v. Hun Sch. of Princeton*, No. 08-3550, 2009 WL 1312591, at *5 (D.N.J. May 11, 2009) (explaining that "under the NJCFA . . . neither a claim for breach of contract nor fraud in the fulfillment of the contract is actionable"); *see also Cox,* 647 A.2d at 462 (concluding that "breach of contract[] is not per se unfair or unconscionable" under the CFA and that, "[b]ecause any breach of . . . contract is unfair to the non-breaching party, . . . substantial aggravating circumstances [must] be present in addition to the breach" in order to establish an "unconscionable business practice").

[14] Plaintiff also suggest this statement is actionable because it "implies that the 'Japanese Government' was responsible for returning funds when it 'has never been given any of the customer's funds.'" This is nonsensical. In context, CoSport represented that it lobbied various entities, including the Japanese Government, in an attempt to secure a full refund for its customers. Ultimately, that attempt failed. CoSport misrepresented nothing.

Conditions, Ex A, at 3. It may also offer a refund "in full" when a "Customer is actually charged by CoSport for any Product[s] . . . , without their respective order(s) being completed" due to "a system failure," such as a "failure of the Customer to input information [and] [w]ebsite failure due to high traffic/technical issues." *Id.* at 4. Again, there is no allegation that Plaintiffs purchased their Tickets and Accommodations at an incorrect price, or that their orders could not be processed due to a "system failure." Nevertheless, CoSport has, in good faith, offered to provide a guaranteed refund to Plaintiffs. This is hardly fraudulent activity. Allowing Plaintiffs' CFA claim to proceed would be akin to rewriting the Terms and Conditions to provide Plaintiffs a remedy they knew at the time of contracting they had no right to receive. That would be improper. *See, e.g.*, *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 113 (2006) ("Courts do not rewrite contracts[,] which parties have freely and voluntarily entered. To interpret the CFA [to cover claims excluded by a contract], would be tantamount to rewriting . . . the contract. We decline to interpret the CFA to permit a claim which has that effect.").

Second, even if the Court finds that Plaintiffs have alleged an actionable misrepresentation, Plaintiffs do not—and cannot allege—that their loss resulted from any such misrepresentation. Rather, Plaintiffs' allegations make clear that their losses resulted from the fact that "Japanese organizers, along with the International Olympic Committee, banned international spectators from any Olympic Events,"

and, ultimately, banned "regular visitors" from traveling to Tokyo. Am. Compl. at ¶ 24.  CoSport is not alleged to have been involved in this decision. Nor is CoSport responsible (or alleged to be responsible) for the Japanese entities' decisions not to refund 100% of Plaintiffs' purchase price. In fact, Plaintiffs' allegations show only that CoSport went beyond its contractual obligations to Plaintiffs and guaranteed them either a 75% cash or 100% credit refund. *See* Am. Compl. at ¶ 28; *see also* 4/6/21 Letter, Ex. I, at 1-2. How Plaintiffs believe this caused their harm remains a mystery.

Because Plaintiffs have not plausibly alleged an affirmative misrepresentation or causation, their CFA claim fails and should be dismissed.

### D.      Plaintiffs do not state a claim under the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act

The TCCWNA was "enacted . . . 'to prevent deceptive practices in consumer contracts." *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 207 N.J. 428, 457 (2011). However, in passing the TCCWNA, "the Legislature did not recognize any new consumer rights, but merely imposed an obligation on sellers to acknowledge clearly established consumer rights and provide remedies for posting or inserting provisions contrary to law." *See Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 69 (2017). Accordingly, to State a claim under the TCCWNA, a plaintiff must identify a 'clearly established legal right' or 'responsibility'" violated by a defendant. *Id.* No such right

is identified in the Amended Complaint. Plaintiffs' TCCWNA claim should therefore be dismissed.

To support their TCCWNA claim, Plaintiffs allege that they have a "clearly established right to receive a full refund where the purpose of the contract was frustrated to the point of impossibility." Am. Compl. at ¶ 106. Putting aside that Plaintiffs have already been offered a full credit refund and a 75% cash refund, no such right (if one exists at all), is implicated here. This is because Plaintiffs assumed the risk of loss associated with their inability to travel to Tokyo for the Olympic Games. *See* Section I(B). Plaintiffs also allege that Plaintiffs independently have a "clear legal right to a refund under CoSport's original Terms and Conditions." Am. Compl. at ¶ 107. Unsurprisingly, Plaintiffs do not cite a single provision of the Terms and Conditions providing for this so-called "clear legal right." None exists. As explained above, the Terms and Conditions provide for a refund is select circumstances, and none are present here. *See* Section I(A). Because Plaintiffs have not plausibly alleged a "clearly established legal right" implicated by CoSport's offer to guarantee a full credit refund or a 75% cash refund for its customers, their TCCWNA claim should be dismissed.

## V.  <u>CONCLUSION</u>

For the above stated reasons, this Court should grant CoSport's Motion and dismiss the Amended Complaint in its entirety with prejudice.

Dated: July 28, 2021

Respectfully submitted,

*/s/ Matthew A. Goldberg*
Matthew A. Goldberg

**DLA PIPER LLP (US**)
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
Facsimile: (215) 656-3301
matthew.goldberg@us.dlapiper.com

*Counsel for Defendant Jet Set Sports,*
*LLC d/b/a CoSport*

## CERTIFICATE OF SERVICE

I, Matthew A. Goldberg, hereby certify that on July 28, 2021, a true and correct copy of Defendant Jet Set Sports, LLC d/b/a CoSport's Motion to Dismiss was served via ECF upon all counsel of record.


/s/ *Matthew A. Goldberg*
Matthew A. Goldberg