**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUZANNE CARUSO; GEORGE PEASLEE; TIFFANY LOYA; and JARED MCCALLISTER, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>JET SET SPORTS, LLC *d/b/a COSPORT*,<br><br>Defendant. | Civil Action No. 21-cv-9665 (ZNQ) (RLS)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss under 12(b)(6) (the "Motion", ECF No. 10) filed by Defendant Jet Set Sports, LLC d/b/a CoSport ("Defendant" or "CoSport"). CoSport filed a brief in Support of its Motion. ("Moving Br.," ECF No. 10-1.) Plaintiffs Suzanne Caruso, April Adams,[1] George Peaslee, Jared McCallister, and Tiffany Loya ("Plaintiffs") filed an Opposition. ("Opp'n Br.," ECF No. 15.) CoSport filed a Reply. ("Reply Br.", ECF No. 16.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the following reasons, Defendant's Motion will be GRANTED.

---

[1] Plaintiff April Adams has since voluntarily dismissed her claims against Defendant. (ECF No. 34.)

1

I. **BACKGROUND AND PROCEDURAL HISTORY[2]**

In the Summer of 2019, ticket and travel packages for the 2020 Tokyo Olympic Games ("Olympic Games") were made public for purchase. (First Amended Complaint ("FAC") ¶ 22, ECF No. 4.) Tickets were available for purchase through CoSport, the exclusive United States seller of event tickets and travel packages to the Olympic Games. (*Id.* ¶ 16.) CoSport published its "Terms and Conditions of Sale Tokyo 2020 Olympic Games" ("Terms and Conditions") on its website.[3]

Because of the COVID-19 pandemic, on March 24, 2020, the Olympic Games were postponed from Summer 2020 to Summer 2021. (*Id.* ¶ 23.) However, on March 20, 2021, the Japanese organizers and the International Olympic Committee banned international spectators from attending any Olympic events. (*Id.* ¶ 24.) Consequently, CoSport offered customers who purchased ticket and travel packages for the Olympic Games the opportunity to either (1) receive a refund of 75% of the funds paid, or (2) to receive a credit for the total amount of the purchase for use at future Olympic Games. (*Id.* ¶ 28.) To receive either refund, customers were required to fill out CoSport's Refund Request form ("the Refund Request"). (*Id.* ¶ 29.) The Refund Request contained a release of claims provision ("the Release") which conditioned any issuance of a refund on releasing CoSport from all liability. (*Id.*) Under the cash refund option, CoSport would retain the remaining 25%. (*Id.*)

---

[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] A copy of the Terms and Conditions and the Refund Request form is not attached to the FAC. (ECF No. 4.) However, both documents were attached to the Plaintiffs' initial complaint. (ECF No. 1.) The document containing the Terms and Conditions was attached as Exhibit A and the Refund Request form was attached as Exhibit C. (ECF Nos. 1-1, 1-3.) Although the documents are not attached to the FAC, both documents are heavily relied on in the FAC and the Court can consider the Terms and Conditions and the Refund Request documents in this Motion. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that a district court can consider documents extraneous to the pleadings if a document is integral to or explicitly relied upon in the complaint).

Plaintiffs filed the initial Complaint in April 2021. (ECF No. 1.) On June, 10, 2021, Plaintiffs filed the FAC on behalf of themselves and on behalf of all members of a proposed class consisting of "[a]ll natural persons and entities in the United States who purchased and/or paid for event tickets and/or travel packages from CoSport for the Tokyo Olympic Games and who have not received a full refund." (*Id.* ¶ 68.) Plaintiffs seek a declaratory judgment and injunctive relief, and they allege violations of the New Jersey Consumer Fraud Act ("CFA") and New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"). (*Id.* ¶¶ 77–110.)

## II. JURISDICTION

Given the diversity of the parties and the amount at issue, the Court finds that it has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations

3

that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. DISCUSSION

### A. RELEASE PLAINTIFFS

Plaintiffs McCallister, Peaslee, and Loya ("Release Plaintiffs") all executed a Refund Request that included a release of their claims against CoSport. All four Plaintiffs allege that they "felt financially coerced by CoSport demanding [their] agreement to new terms and conditions under the threat to retain all of [their] money." (FAC ¶¶ 45, 56, 61, 66.)

Plaintiff Jared McCallister made two purchases of tickets and a travel package for a total of $28,165.50. (*Id.* ¶ 51.) Following the March 2021 announcement, Plaintiff McCallister emailed CoSport multiple times requesting a full refund. (*Id.* ¶ 52.) In April of 2021, CoSport emailed Plaintiff McCallister the Refund Request form and instructed him to return the completed form within four days. (*Id.*) Plaintiff McCallister filled out a Refund Request form because "he feared he would not receive any refund at all if he did not." (*Id.* ¶ 53.)

Plaintiff George Peaslee purchased tickets and a travel package for a total of $16,195.61 in December of 2019. (*Id.* ¶ 57.) Following the March 2020 announcement, Plaintiff Peaslee requested a refund from CoSport. (*Id.* ¶ 58.) Plaintiff Peaslee filled out a Refund Request form

4

because "he feared that if he did not, he would not receive any refund at all, based on his communications from CoSport." (*Id.* ¶ 53.)

Plaintiff Tiffany Loya purchased tickets and a travel package for a total of $13,384.96 in July of 2019. (*Id.* ¶ 62.) After the March 2020 announcement, Plaintiff Loya contacted CoSport and made refund requests; CoSport did not respond for over seven months. (*Id.* ¶ 63.) In January of 2021, CoSport instructed Plaintiff Loya to complete the Refund Request form. (*Id.*) Plaintiff Loya filled out the form "because, if she did not, she feared she would not receive any refund at all." (*Id.* ¶ 64.)

When Release Plaintiffs accepted the 75% cash refund from CoSport, they agreed to the following Release within the Refund Request:

> By exercising this option, I also agree to forever discharge and Refund Request CoSport and its affiliates from any and all claims arising out of or in connection with your order (sic). You also agree you have read and understand the refund process outlined in the accompanying letter, dated April 6.

(FAC ¶ 33.)

Release Plaintiffs do not dispute that they signed the Refund Request form. Instead, they allege various claims relating both to the ticket purchases and the Refund Requests. Release Plaintiffs contend that the Release is unenforceable for lack of consideration, and that there are factual issues regarding the Refund Request, including whether Release Plaintiffs executed it under economic duress or whether they knowingly and voluntarily executed the Refund Request. Therefore, they argue that dismissal at this stage is improper. (Opp'n Br. at 18–25.) Release Plaintiffs further allege that they are entitled to recover a 100% refund of their ticket purchases under the equitable doctrine of frustration of purpose. (*Id.* at 9–17.) CoSport, however, asserts

5

that the Refund Request is an enforceable contract and that the claims alleged by the Release Plaintiffs "are barred by the express terms of a valid contract." (Moving Br. at 13.)

Accordingly, the Court must first consider the enforceability of the Release to determine whether it bars Release Plaintiffs from bringing claims against CoSport.

### 1. Enforceability of the Release

In New Jersey, "[t]he rules of interpretation that apply to contracts generally apply also to writings that purport to be releases." *Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 311 (D.N.J. 1997) (citing Restatement (Second) of Contracts § 284 cmt. c). Executed releases are also entitled to a presumption of validity: "where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he read, understood and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in the signing." *Id.* at 311–12 (quoting *Peter W. Kero Inc. v. Terminal Const. Corp.*, 78 A.2d 814, 817 (N.J. 1951)). An exception to the presumption of validity "arises when there is fraud, misrepresentation, overreaching by the releasee, incapacity of the releasor affecting his ability to understand the release, or any other equitable ground." *Id.* at 313; *see also 760 New Brunswick Urban Renewal Ltd. Liab. Co. v. Navigators Specialty Ins. Co.*, Civ. No. 20-5877, 2021 WL 287876, at *10 (D.N.J. Jan. 28, 2021) (recognizing the New Jersey Supreme Court's consistent instruction to enforce clear and ambiguous contracts in the absence fraud, duress, and/or misrepresentation).

#### a. Whether the Release Lacks Consideration

Release Plaintiffs allege that the Release is invalid and unenforceable because "CoSport offered no consideration for the new terms and releases it insisted were a condition of providing refunds." (FAC ¶ 33.) CoSport disagrees and maintains that its offer of "a refund of 75 percent of the funds paid" or "a credit for the total amount of the purchase for use at future Olympic games" constitutes sufficient consideration. (Moving Br. at 14; FAC ¶ 28.) It is well-established that

6

"[t]he essential requirement of consideration is a bargained-for-exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 878 (N.J. 2002). Under New Jersey law, a "very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract." *Id.* (internal citations omitted). Further, "consideration need not be monetary or substantial." *Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. Super. App. Div. 2002).

Here, the FAC claims that CoSport used "its position as the holder of Plaintiffs' money to manipulate consumers into entering into a new agreement releasing CoSport from liability" and CoSport "offered no consideration for the new terms and releases it insisted were a condition of providing refunds." (FAC ¶¶ 31, 33.) To the extent Release Plaintiffs argue that CoSport's offer was a repayment of Release Plaintiffs' own money, the Court disagrees. (Opp'n Br. 18.) Even at this early stage of the proceedings, it is clear from the terms of the ticket sale that CoSport had a cognizable claim to 100% of the disputed proceeds. As set forth below, its Terms and Conditions explicitly provide that CoSport is not responsible for circumstances that may arise after the purchase of tickets that may make it inconvenient or impossible for Release Plaintiffs to travel.

> **Insurance:** THE COMPANY is not responsible or liable for loss, damage, theft of personal belongings, or for personal injury, accidents, and/or illness. *Additionally, THE COMPANY is not responsible for circumstances that may arise subsequent to the purchase of Product(s) that may make it inconvenient or impossible for Customer to travel or use the Product(s), including without limitation,* acts of God, financial circumstances of the Customer, climatic conditions, breakdown of machinery or equipment, *acts of government or other authorities,* wars whether or not declared, civil disturbances, strikes, riots, thefts, *epidemics,* quarantines, medical or customs regulations, terrorist activities, *or any other actions, omissions or conditions beyond THE COMPANY's control.* Neither THE COMPANY nor any of its affiliates or subsidiaries shall be or become liable or responsible for

>  any additional expenses or liabilities or injuries sustained or incurred by Customer as a result of any of the aforementioned causes. For protection against such contingencies, THE COMPANY recommends that Customer maintain suitable insurance to cover these possibilities.

(Ex. A at 8–9) (emphases added). Accordingly, the FAC makes clear that when Release Plaintiffs resolved their dispute with CoSport by agreeing to accept a 75% cash refund in exchange for a release of their claims, Release Plaintiffs did receive consideration in the form of avoiding the time, costs, and risks associated with litigating their claims.

In their opposition brief, Release Plaintiffs argue for the first time that they received insufficient consideration rather than no consideration. (Opp'n Br. at 18–19.) The FAC, however, is silent as to whether the 75% cash refund was insufficient consideration. It is a matter of black letter law that "a party may not amend [its] pleadings by making factual assertions in a brief." *Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 663 (D.N.J. 2010). In deciding the Motion, the Court therefore ignores Release Plaintiffs' unpled argument that CoSport's offer of a 75% refund was not sufficient consideration.[4]

Based on the foregoing, the Court finds that the FAC fails to plausibly plead unenforceability of the Release based on defects in the consideration that Release Plaintiffs received.

---

[4] Should Plaintiffs consider amending their Complaint to allege insufficient consideration, the Court cautions that, generally speaking, New Jersey courts "do not inquire into the adequacy of consideration in determining whether to enforce a contract." *Seaview Orthopedics v. Nat'l Healthcare Res., Inc.*, 841 A.2d 917, 921 (N.J. Super. App. Div. 2004). This is because "legal sufficiency does not depend . . . upon the comparative value of the consideration and of what is promised in return." *Borbely v. Nationwide Mutual Ins. Co.*, 547 F. Supp. 959, 980 (D.N.J. 1981) (quoting *Tumarkin v. Goldstein*, 33 N.J.Super. 46, 50, 109 A.2d 435 (App. Div. 1954)). "Rather, the consideration 'must merely be valuable in the sense that it is something that is bargained for in fact.'" *Id.* (quoting 1 Corbin on Contracts § 131 (1963)).

> b. *Factual Issues Impacting Release Plaintiffs' Execution of the Refund Request*

Release Plaintiffs separately argue that the Refund Request is not enforceable because of "factual issues regarding Plaintiffs' knowing and intentional execution of the releases." (Opp'n Br. at 18.)

First, Release Plaintiffs argue and allege that the releases they executed are invalid because of economic duress. (*Id.* at 20–22; FAC ¶ 81.) In short, they "feared [they] would not receive any refund at all" if they did not fill out the Refund Request. (FAC ¶¶ 53, 58, 64.) Release Plaintiffs also allege they "felt financially coerced by CoSport demanding [their] agreement to new terms and conditions under the threat to retain all of [their] money." (FAC ¶¶ 56, 61, 66.) CoSport disagrees and argues that Release Plaintiffs do not allege valid economic duress or that "CoSport engaged in any wrongful act." (Moving Br. at 15.) Instead, CoSport asserts that the Release Plaintiffs merely "complain that CoSport exerted economic pressure, by way of a subsidized guaranteed refund, to obtain the at-issue release." (*Id.*)

Under New Jersey law, a party alleging economic duress must plead two elements: (1) the party was "the victim of a wrongful or unlawful act or threat" which (2) "deprive[d] the victim of his unfettered will." *Cont'l Bank of Penn. v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1175 (N.J. 1983).

The wrongful act element "encompasses more than criminal or tortious acts . . . for conduct may be legal but still oppressive" and the decisive factor in an economic duress analysis "is the wrongfulness of the pressure exerted." *Id.* Further, "[m]erely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion[.]" *Cont'l Bank*, 459 A.2d at 1176 (internal citations omitted). Importantly, "where there is adequacy of consideration, there is

9

generally no duress." *Clermont v. Brown*, Civ. No. 08-4257, 2009 WL 5205422, at *4 (D.N.J. Dec. 23, 2009) (quoting *Sauter v. Fed. Home Loan Bank*, Civ. No. 08-899, 2009 WL 2424689, at *8 (D.N.J. Aug. 5, 2009)).

Here, Release Plaintiffs argue that the wrongful act at issue is that "CoSport used its control over each customer's money and their fear of losing it all in order to force Plaintiffs to execute a release." (Opp'n Br. at 20). Nevertheless, as CoSport observes, while Release Plaintiffs may have feared they would not receive a refund if they did not sign the Refund Request, this fear is not a result of CoSport's oppressive or excessive pressure.[5] (Moving Br. at 14 n. 8.)

Second, the FAC also fails to allege how CoSport deprived Release Plaintiffs of their "unfettered will" to refuse the refund. (*See* Reply Br. at 12.) Notably, not all Plaintiffs filled out the Refund Request, suggesting that the Refund Request did not, in fact, deprive customers of their unfettered will. (*Id.*) Even the FAC alleges that although Plaintiff Caruso felt financially coerced by the Refund Request, she decided not to complete the form "because she did not agree to CoSport's retention of 25% of her money and did not agree to the liability limitations set forth in that document." (FAC ¶ 43.)

Release Plaintiffs additional arguments in Opposition regarding outstanding factual issues concerning whether they knowingly or voluntarily executed the Refund Request, or whether the Refund Request grew out of unequal bargaining, are not supported by the allegations in the FAC. (Opp'n Br. at 22–25.) Unlike with their allegation of economic duress, the FAC does not contain any facts that suggest the Refund Requests were executed involuntarily. In their briefing, Release Plaintiffs attempt to argue that the parties were not on equal footing when CoSport offered the

---

[5] In the absence of a specific pleading to the contrary, the Court is left to speculate that Release Plaintiffs' fears that they might not get their refund were borne of more practical concerns, such as a lawsuit being unsuccessful or that CoSport might become insolvent.

10

Release. (*Id.* at 23–24.) In support of their position, they point to the financial coercion they felt when presented with the release provision. (*Id.* at 24.) Even if Release Plaintiffs' allegation that they felt "financially coerced" is taken to mean that the parties were of unequal bargaining power, this is not a sufficient ground to render the entire Refund Request unconscionable. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) ("A contract, however, is 'not unconscionable merely because the parties to it are unequal in bargaining position.'") (quoting Restatement (Second) of Contracts § 208).

        2.      Counts I, II & III of the FAC

All three Counts consist of "claims arising out of or in connection with [Release Plaintiffs'] order" of tickets and travel to the 2020 Olympics. Given the release of claims provision within the executed Refund Request, the Court agrees that the Release Plaintiffs are barred from bringing Counts I, II, and III against CoSport. Accordingly, the Court will dismiss Counts I, II, and III without prejudice.

**B.    NONRELEASE PLAINTIFFS**

Plaintiff Suzanne Caruso is the only named Plaintiff who did not execute the Release. She purchased tickets and a travel package from CoSport to attend the Olympic Games for $16,375.00 in December of 2019. (*Id.* ¶ 40.) Plaintiff Caruso did not complete the Refund Request form because she "did not agree to CoSport's retention of 25% of her money and did not agree to the liability limitations set forth in that document." (*Id.* ¶ 43.)

Insofar as she is not bound by the Release, the Court will separately consider the Motion to Dismiss with respect to Plaintiff Caruso.

11

1.      Count I: Declaratory and Injunctive Relief

First, Count I of the FAC asserts that all Plaintiffs are entitled to a full refund because "the purpose of the event tickets and travel packages sold to customers in the United States was so frustrated as to render the contracts impossible to perform." (FAC ¶ 25.)

As a preliminary matter, CoSport identifies that Plaintiffs "oscillate between referring to the equitable doctrines of impossibility and frustration of purpose" in the FAC. (Moving Br. at 18 n. 11.) Plaintiffs do not dispute CoSport's assertion and instead note that "the Court could reach the Plaintiffs' preferred result under either doctrine" but for the "purpose of responding to [CoSport's] arguments, Plaintiffs focus on frustration here." (Opp'n Br. at 11 n. 7.) Accordingly, the Court will confine its analysis to the doctrine of frustration of purpose.[6]

New Jersey law follows the Restatement (Second) of Contracts when applying the principle of frustration of purpose. Section 265 of the Restatement (Second) of Contracts, provides that:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 265.

There are three requirements necessary to invoke frustration of purpose: (1) the frustrated purpose must have been a principal purpose of that party in making the contract; (2) the frustration must be so substantial "that it is not fairly to be regarded as within the risks that [the parties]

---

[6] Though the "respective concepts of impossibility of performance and frustration of purpose are, in essence, doctrinal siblings within the law of contracts," they are two distinct doctrines. *JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc.*, 67 A.3d 702, 708 (N.J. Super. App. Div. 2013). Neither CoSport nor Plaintiff discuss or apply the doctrine of impossibility in their respective briefs. Instead, CoSport summarily asserts that "[b]ecause the Parties performed their obligations under the contract . . . the impossibility doctrine is of little import here." (Moving Br. at 18 n.11). Similarly, Plaintiffs' summarily respond suggesting that "the Court could reach the Plaintiffs' preferred result under either doctrine." (Opp'n Br. at 11 n.7). Insofar as the parties have not substantively briefed this issue, the Court does not consider it.

assumed under the contract"; and (3) the commentary reiterates that the doctrine may not be invoked where the parties assumed the risk of the occurrence of the frustrating event. *Id.* at cmt. a.; *see Unihealth v. U.S. Healthcare, Inc.*, 14 F. Supp. 2d 623, 634–35 (D.N.J. 1998).

Here, the parties agree that the first element has been satisfied. Rather, CoSport argues that Plaintiff Caruso "cannot establish the second or third elements necessary to invoke the frustration doctrine" because "CoSport not only informed Plaintiffs that they bore the risk associated with the *exact* frustration inducing event alleged here, but also recommended that Plaintiffs take steps to insure against that risk." (Moving Br. at 22) (emphasis in original). To support its position, CoSport relies on two provisions within the Terms and Conditions—a provision titled "Travel to Host City" and a provision titled "Insurance"—that address Plaintiff Caruso's "inability to enter Japan and attend the Olympic Games due to a government-imposed travel restriction." (Moving Br. at 21–22.)

In Opposition, Plaintiff Caruso asserts several arguments arguing why customers who purchased tickets and travel to the Olympics did not assume the risk, including that (1) the Terms and Conditions do not contain any promise by Plaintiffs to perform despite frustration, (2) the force majeure clause within the Terms and Conditions only shields CoSport from actions for breach of contract, (3) the equitable action for "money had and received" entitles Plaintiffs to a full refund. (Opp'n Br. at 12–17.) But beyond conclusively alleging that the contracts were "so frustrated as to render [them] impossible to perform", there is just a single factual allegation made in the FAC that relates to assumption of risk: "[n]o term contemplated that the Olympic Games would be postponed for a year beyond the scheduled date nor did the Terms and Conditions address a scenario where international spectators were banned from attendance." (FAC ¶ 22.)

13

Although the Terms and Conditions do not include the exact phrase "a scenario where international spectators were banned from attendance," there are several other provisions that specifically address a customer's inability to attend the Olympic Games and that CoSport "cannot be liable for events that would make it impossible for Plaintiffs to travel to Tokyo and attend the Olympic games." (Reply Br. at 3.) First, the Travel to Host City provision allocates the risk to customers in the event they would be "refused entry" into Japan. Specifically, the provision provides that CoSport "accepts no responsibility or liability whatsoever . . . if [purchasers] are refused entry at customs/immigration." (FAC, Ex. A at 7.) Second, the Insurance provision first puts customers on notice that CoSport is not responsible for circumstances that would make it impossible for customers to travel, including "acts of government . . . epidemics, quarantines, [and] medical or customs regulations." Then the provision encourages customers to acquire insurance to protect themselves in the event any of the identified acts actually occur, as it did here.

Plaintiff Caruso's arguments asserting that the Insurance provision shields CoSport only against actions brought under law, and not equity, are also not convincing. (Opp'n Br. at 13–14). Considering the contract as a whole, it demonstrates that CoSport has assigned travel-related risks to its customers and the risk allocation limits CoSport's liability against actions of law or equity. *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973) ("A contract is to be considered as a whole, and, if possible, all its provisions should be given effect.").

Accordingly, the Court does not find that Plaintiff Caruso sufficiently pleads a claim for frustration of purpose based on the bare allegations within the FAC.[7] This claim will therefore be dismissed without prejudice.

---

[7] Plaintiff Caruso suggests that "CoSport's motion contains a significant amount of gratuitous information and allegations that do not appear in the Complaint, are not integral to the Complaint, and are not relied upon by the Complaint." (Opp'n Br. at 37.) However, the Court's analysis is based only on the FAC and the exhibits that are relied on in the FAC.

### 2. Count III: Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA")

Next, Count III of the FAC asserts violations of the TCCWNA. To establish a claim under the TCCWNA, a plaintiff must show four elements: (1) that the defendant was a seller; (2) that the seller offered or entered into a written consumer contract; (3) that, at the time the written consumer contract was signed or displayed, the writing contained a provision that violated a clearly established legal right of a consumer or responsibility of a seller; and (4) that the plaintiff is an aggrieved consumer. *Spade v. Select Comfort Corp.*, 181 A.2d 969, 976 (N.J. 2018) (citing N.J. STAT. ANN. § 56:12-15, -17).

The parties do not dispute the first two elements of the *Spade* test. Namely, CoSport is in fact a seller and it entered into a written agreement with Plaintiff Caruso when she purchased a ticket and a travel package. (*See* FAC ¶¶ 104, 105, 40.) The parties then turn their attention to the third *Spade* element: whether CoSport "violated a clearly established legal right."

Plaintiff Caruso contends that the common law claims of frustration of purpose and "money had and received" provide her with a legal right to a refund. (Opp'n Br. at 33.) The FAC alleges that (1) "CoSport has engaged in unconscionable conduct in violation of this clear legal right by trying to force Plaintiffs and other members of the Class to agree to only obtain a 75% refund" and (2) attempted to force Plaintiffs to release their claims against CoSport in exchange for a refund "despite their clear legal right to a refund under CoSport's original Terms and Conditions." (FAC ¶¶ 106–07.)

CoSport maintains that the FAC fails to identify a legal right that it violated because no right exists. (Moving Br. at 26–27.) The Court agrees with CoSport. Plaintiff Caruso's TCCWNA claim rests on the viability of the frustration of purpose doctrine and the Court's finding that the Release is unenforceable. However, the Court has already concluded that Plaintiff Caruso has

15

failed to allege a claim for frustration of purpose, that she is not entitled to a refund under the Terms and Conditions of the contract, and that the FAC fails to plausibly plead that the Release is unenforceable. In light of these findings, the Court further finds that the FAC fails to plausibly plead that CoSport has "violated a clearly established legal right" and thus her TCCWNA claim should be dismissed without prejudice.

### 3.  Count II: New Jersey Consumer Fraud Act ("CFA")

Finally, Count II of the FAC asserts that CoSport violated the CFA. (FAC ¶¶ 85–100.) Generally, the CFA prohibits:

> The act, use, or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

N.J.S.A. § 56:8-2.

A prima facie case under the CFA requires three elements: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Pavan v. GreenPoint Mortg. Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). Notably, Plaintiff Caruso has not executed a Release and therefore has not been impacted by any alleged unlawful conduct as it relates to the NJCFA claim. (FAC ¶ 43.) Even Plaintiffs argue in Opposition that causation "is shown by each class member's execution of a refund request form with CoSport." (Opp'n Br. at 31.) It is therefore unclear what loss Plaintiff Caruso has suffered and how any loss resulted from CoSport's purported misrepresentations. (Opp'n Br. at 31.) Accordingly, Plaintiff Caruso cannot establish an element

16

required to state a claim under the CFA. Accordingly, the Court finds that the FAC fails to plausibly plead a claim for violation of the CFA (Count II). It therefore will also be dismissed without prejudice.[8]

## V.   CONCLUSION

For the reasons outlined above, the Court will GRANT CoSport's Motion to Dismiss and dismiss the claims of the FAC without prejudice. Plaintiffs will be given 30 days to file an Amended Complaint consistent with this Opinion. An appropriate Order will follow.

Date: **October 24, 2023**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

---

[8] Because Plaintiff Caruso cannot demonstrate that she suffered an ascertainable loss, the Court does not address the remaining elements of the CFA claim.